Stuart M. COWAN

v.

The UNITED STATES.

No. 422–60.

United States Court of Claims.

May 10, 1963.

Fred W. Shields, Washington, D. C., for plaintiff. King & King, Washington, D. C., on the briefs.

Charles M. Munnecke, Washington, D. C., with whom was John W. Douglas, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and WHITAKER, LARAMORE, DURFEE and DAVIS, Judges.

LARAMORE, Judge.

The plaintiff, who at one time was a line officer in the Naval Reserve, but who is now a legal specialist in the Regular Navy, sues for additional pay allegedly due him.

The case involves the question whether, when the plaintiff was transferred from the Naval Reserve to the Regular Navy for service as a legal specialist, the three years' constructive service to which he was entitled on the basis of his professional legal training should have been computed as of the date of his admission to the bar (which was the date actually used by the Navy for the purpose), or as of the date of his original commissioning in the Naval Reserve (which the plaintiff says was the proper date to be used).

The facts briefly are these: Plaintiff graduated from law school in June of 1955, took the New Jersey bar examination, and on November 4, 1955, entered the Navy Officer Candidate School at Newport, Rhode Island. In the latter part of November 1955, while attending the Officer Candidate School, plaintiff was informed that he had successfully passed the bar examination. However, in order to be formally admitted to the bar it was necessary for him to appear before the Supreme Court of New Jersey, or before a justice of that court, sometime when the court was in session and take the prescribed oath. Plaintiff could not appear at the time indicated due to his duties at the school.

Plaintiff was appointed Ensign, US NR, as a line officer on March 30, 1956, and received orders which directed him to remain at Newport for temporary duty, and upon completion thereof to report to the School of Naval Justice at Newport for a 7-week course. Upon completion of that course, his orders further provided that he proceed to San Francisco, California for a permanent duty assignment in the Pacific.

Plaintiff was authorized leave from March 30, 1956, to April 15, 1956, and was allowed some free time prior to reporting to San Francisco. He reported for his permanent duty on July 28, 1956. Plaintiff did not appear before the Supreme Court of New Jersey until June 24, 1957, when he took the oath and was admitted to the bar.

Plaintiff served as a line officer aboard the U.S.S. Los Angeles. His primary duty was as a communications watch officer. However, he was also assigned legal duties, and in January of 1957 he was designated as legal officer of the vessel. The personnel authorized for the U.S.S. Los Angeles at the time did not include special duty officers (law).

On July 23, 1957, the plaintiff applied for transfer to the Regular Navy with commissioned rank as special duty officer (law) pursuant to the Navy and Marine Corps Officer Augmentation Act of 1955, 69 Stat. 606, which provides in pertinent part:

"Sec. 2. (a) The President may appoint to permanent commissioned grades, not above lieutenant in the Regular Navy and captain in the

Regular Marine Corps, officers of the Naval Reserve and Marine Corps Reserve, and officers of the Regular Navy and Regular Marine Corps who do not hold permanent commissioned appointments therein, subject to the conditions and limitations in the following subsections of this section.

"(b) Appointments made under this section shall be made pursuant to regulations prescribed by the President for the administration of this section, which regulations shall include, among other provisions, the following:

"(1) Provisions establishing standards and qualifications for appointments to the grades specified herein;

"(2) Provisions for the determination of the lineal position and precedence of appointees; * * *."

At the time of the submission by the plaintiff of the application referred to above, and at all subsequent times while plaintiff's application was pending and being acted on, there was in effect an instruction from the Bureau of Naval Personnel (BUPERSINST 1120.12E, dated 10 October 1956) which established eligibility requirements and processing procedures. The regulation provided that he hold a degree from an accredited law school and be a member of the bar, and further provided that each officer so selected would be adjusted to the lineal position he would hold had he received three years' constructive credit upon initial commissioning.

The practice of the Navy was to credit three years' constructive service computed as of the latest of three dates: (1) date of graduation from law school; (2) date of admission to the bar; or (3) date of initial commissioning in the Navy. Accordingly, plaintiff was allowed credit from the time of his admission to the bar, which was the latest of the three dates.

Plaintiff first applied to the Navy, asking that his position on the lineal list of Navy officers be adjusted to show that he held his rank as Lieutenant (junior grade) from September 30, 1954 rather than December 24, 1955, thus giving him credit for three years' constructive service as of the date of his original commissioning in the Navy. Upon denial of this application, plaintiff applied to the Board for Correction of Naval Records. The Board made the following decision:

"It is the decision of this Board that the naval record of Lieutenant Stuart M. COWAN, USN, 605982/1620, be corrected by changing the effective date of his promotion to the grade of Lieutenant (junior grade) from 30 September 1957 to 24 June 1957; that he accepted this appointment on 24 June 1957 and was qualified therefor in all respects; and by changing the effective date of his appointment to the grade of Lieutenant from 1 November 1958 to 1 June 1958, which appointment he accepted on that date and for which he was qualified in all respects.

After approval of this decision, plaintiff filed suit in this court.

Plaintiff in his petition alleges arbitrary and capricious action on the part of the Correction Board. However, on brief he now says such a finding is unnecessary. He now contends that his right in this case is based upon the provisions of the statute providing for constructive service for specialists, and the instruction of the Bureau of Personnel. In other words, plaintiff contends that section 201 of the Reserve Officer Personnel Act of 1954, 68 Stat. 1147,* provided for appointment as a law specialist and provided three years' constructive service; that under the Naval Augmentation Act of 1955, supra, his appointment was provided for subject only, plaintiff says, to a single regulation, namely paragraph 5e(1) (e) of Bureau

---

* See 10 U.S.C.A. § 5600.

of Personnel Instruction 1120.12E, supra, which provides:

"(e) Special Duty Officers (Law) (1620)—Must hold a degree from a law school accredited by the American Bar Association and be a member of the bar of a Federal Court or the highest court of a State or Territory of the United States or the District of Columbia."

Paragraph 7(b) (1) provides:

"Each officer who is selected for transfer as Special Duty Officer (Law) (1620) will be adjusted to the lineal position he would hold had he received three years constructive credit upon initial commissioning."

Plaintiff's argument simply stated is that under the above Instruction he is entitled to three years' constructive credit from the date he was originally commissioned in the Navy. He bases this contention on an interpretation of the words "initial commissioning" as used in Bureau of Personnel Instruction 1120.12E, supra.

On the other hand the defendant contends (1) that plaintiff was given the same credit as awarded to all other officers in a similar status; (2) to compute credit from the date of original appointment without regard to the date that the officer concerned established his qualifications is wholly incompatible with the underlying basis for the award of such credit; (3) the statutory authority provides for credit based upon professional qualifications.

Other than to show the uniform policy of the Navy in these matters, we can see little relevancy in what the Navy did regarding other officers as compared to this plaintiff. However, we do see merit in the second and third contentions of defendant.

Beyond question the policy of Congress and the Navy was and is to make allowances for the officer possessed with professional qualifications. No mystery surrounds this allowance. It is the established policy to reward officers in consideration of attainment of professional qualifications. It operates to place them ahead of other officers on the promotion list. The reason is obvious— such officer has, because of education gained on his own time and at his own expense, become qualified to render a service to the Navy which he otherwise could not. In the case of a law specialist, he is being awarded something akin to a legal fee. He is given something extra because he is a qualified lawyer. Thus, since he is to be rewarded for his qualifications as a lawyer, certainly he should not be given something until he has fully qualified. In other words, one cannot become a qualified lawyer until he has taken the oath and is admitted by someone clothed with that authority. Therefore, it seems not only consistent with Navy policy but consistent with reason and logic that when the regulation referred to "initial commissioning" it must have meant initial commissioning as a legal specialist. One cannot become a medical doctor without completing the required medical education and passing the required medical board. One cannot become a CPA sans the required additional requirements and successful board examination. True, a doctor, lawyer, CPA, or a member of any other profession may be learned in his particular field, but the fact remains that until he has fully qualified he has not attained the elevation required to make him fully capable of performing service in his profession. Thus we can see nothing arbitrary or unlawful in the Navy practice of refusing credit until the officer has fully qualified, i. e., admission to the bar.

Nor can we see anything inequitable in this situation. Plaintiff had ample opportunity to make appearance, take the prescribed oath and be formally admitted to the bar, and as the findings show "[t]he evidence in the record fails to establish * * * that the plaintiff attempted with reasonable diligence to make arrangements for such an appearance." We think plaintiff procrastinated and by so doing effectively denied the Navy the full use of his services as a legal specialist.

Furthermore, plaintiff can gain no comfort from the fact that he was assigned certain legal duties aboard ship. Perhaps this is done in many instances, yet we find nothing in the record upon which to conclude that, in the absence of full qualifications, those officers ever were granted the credit asked for here. As a matter of fact, many times a pharmacist's mate performs the chores of a medical officer, and it could not be contended that such duty would qualify for a constructive credit.

What we have said is entirely consistent with the intent of Congress. The Senate Report, accompanying the Reserve Officer Personnel Act of 1954, supra, which repeats in substance the House Report, we believe evidences what Congress intended when it was concerned with "constructive credit." The Report states:

"It is mandatory that persons *initially* appointed as * * * JAG * * * officers be granted minimum constructive credit * * *."[1] [emphasis supplied]

The Report goes on to state that the authority provided is similar to that for the initial appointment of Regular officers provided in the Officer Personnel Act of 1947, 61 Stat. 795, 890–891, sections 407 (chaplains in the Navy), 408 (Navy officers required to hold graduate degrees), and 506(c) ** (Army and Air Force Officers).

The section of the above statute which mentions JAG officers reads:

" * * * each person appointed and commissioned an officer * * * with a view to assignment in the Judge Advocate General's Department, shall, at time of appointment, be credited * * *."[2]

Thus it seems clear that Congress intended the words "initial commission-

ing" to mean when the officer qualified under standards which provided for full qualification as a lawyer. One cannot be a fully qualified lawyer until he passes the bar examination and is admitted to the bar, and when the Navy consistently awarded service credits as noted earlier, it must have construed the congressional intent as we have. In fact, the Navy was without power to confer rights by regulation greater than those granted by congressional authority.

For the above reasons, we hold that the granting of constructive credit effective the date of his admission to the New Jersey Bar was lawful and in no wise arbitrary or capricious. Consequently plaintiff's petition is dismissed.

plaintiff was commissioned "with a view to assignment in the Judge Advocate General's Department." As a matter of fact, the vessel upon which plaintiff was first serving carried no legal officer billet.

---

1. 3 U.S.Code Cong. and Admin.News (1954) 3937.

** See 10 U.S.C.A. §§ 506c—2 to 506c—9.

2. In this respect the record fails to disclose anything which would permit us to say